IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

JOSEPH E. GUADAGNOLI,

       Plaintiff,

     vs.                                    1:15-cv-00214-MCA-LF

CAROLYN W. COLVIN, Acting
Commissioner of the Social Security
Administration,

       Defendant.

**PROPOSED FINDINGS AND RECOMMENDED DISPOSITION**

THIS MATTER comes before the Court on plaintiff Joseph E. Guadagnoli's Motion to

Reverse and Remand for a Hearing with Supporting Memorandum (Doc. 21), which was fully

briefed January 27, 2016 (Doc 27).  Pursuant to 28 U.S.C.§§ 636(b)(1)(B), (b)(3), and *Virginia*

*Beach Fed. Sav. & Loan Ass'n. v. Wood*, 901 F.2d 849 (10th Cir. 1990), the Honorable Chief

District Judge M. Christina Armijo referred this matter to me for a recommended disposition.

Doc. 20.  Having carefully reviewed the parties' submissions and the administrative record, I

recommend that the Court grant Mr. Guadagnoli's motion and remand this case to the Social

Security Administration for further proceedings.

**I.**      **Legal Standards**

In a Social Security appeal, the Court determines whether the Commissioner's final

decision[1] is supported by substantial evidence and whether the correct legal standards were

applied.  *Maes v. Astrue,* 522 F.3d 1093, 1096 (10th Cir. 2008).  If substantial evidence supports

the Commissioner's findings and the correct legal standards were applied, the Commissioner's

---

[1] The Court's review is limited to the Commissioner's final decision, 42 U.S.C. § 405(g), which
generally is the ALJ's decision, 20 C.F.R. §§ 404.981, 416.1481, as it is in this case.

decision stands, and the plaintiff is not entitled to relief. *Langley v. Barnhart,* 373 F.3d 1116, 1118 (10th Cir. 2004). "The failure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal." *Jensen v. Barnhart,* 436 F.3d 1163, 1165 (10th Cir. 2005) (internal quotation marks and brackets omitted). The Court may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Flaherty v. Astrue,* 515 F.3d 1067, 1070 (10th Cir. 2007).

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Langley,* 373 F.3d at 1118. A decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Id.* While the Court may not reweigh the evidence or try the issues *de novo*, its examination of the record as a whole must include "anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Grogan v. Barnhart,* 399 F.3d 1257, 1262 (10th Cir. 2005). "'The possibility of drawing two inconsistent conclusions from the evidence does not prevent [the] findings from being supported by substantial evidence.'" *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (quoting *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)).

To qualify for disability benefits, a claimant must establish that he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a).

When considering a disability application, the Commissioner is required to use a five-step sequential evaluation process.  20 C.F.R. §§ 404.1520, 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987).  At the first four steps of the evaluation process, the claimant must show:  (1) the claimant is not engaged in "substantial gainful activity;" (2) the claimant has a "severe medically determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; *and* (3) the impairment(s) either meet or equal one of the Listings[2] of presumptively disabling impairments; *or* (4) the claimant is unable to perform his or her "past relevant work."  20 C.F.R. §§ 404.1520(a)(4)(i–iv), 416.920(a)(4)(i–iv); *Grogan*, 399 F.3d at 1261.  If the claimant cannot show that his or her impairment meets or equals a Listing but proves that he or she is unable to perform his or her "past relevant work," the burden then shifts to the Commissioner, at step five, to show that the claimant is able to perform other work in the national economy, considering the claimant's residual functional capacity ("RFC"), age, education, and work experience.  *Id.*  A finding that the claimant is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis.  *Casias v. Sec'y of Health and Human Servs.,* 933 F.2d 799, 801 (10th Cir.1991).

## II.    **Background and Procedural History**

Mr. Guadagnoli is a 66-year-old United State Army veteran with experience working as a retail clerk, a stock clerk, a nursing assistant, a cashier, and a mental health care worker.  AR[3] 144, 198, 214–25.  Mr. Guadagnoli lives alone and is able to take care of his daily needs, albeit with some difficulty.  AR 40–43, 71, 78, 204–08.  Mr. Guadagnoli is able to engage in leisure

---

[2] 20 C.F.R. pt. 404, subpt. P, app. 1.

[3] Documents 16-1 through 16-27 comprise the sealed administrative record ("AR").  When citing the record, the Court cites the AR's internal pagination rather than the CM/ECF document number and page.

3

activities, including traveling abroad, and is able to drive and care for his dogs, although he takes naps several times during the day.  AR 24, 40–42.

Mr. Guadagnoli applied for disability insurance benefits in October 2013—when he was 63 years old—alleging disability since July 30, 2013, because of osteoarthritis, depression, and an underactive thyroid.  AR 196.  His claims were denied initially and upon reconsideration.  AR 60–85.  Mr. Guadagnoli requested a hearing before an administrative law judge ("ALJ"), and ALJ Ann Farris held a hearing on September 15, 2014.  AR 98–99, 32–66.

The ALJ issued her unfavorable decision on October 7, 2014.  AR 15–31.  At step one, the ALJ found that Mr. Guadagnoli met the insured status requirement of the Social Security Act through June 30, 2015, and that he had not engaged in substantial, gainful activity since July 1, 2013.  AR 20.  The ALJ noted that although Mr. Guadagnoli had worked part-time as a sales associate at Target for three months during the relevant time period, his earnings from that position "fall short of the amount considered substantial gainful activity."  *Id.*

Because Mr. Guadagnoli had not engaged in substantial gainful activity for at least 12 months, the ALJ proceeded to step two.  *Id.*  At step two, the ALJ found that Mr. Guadagnoli suffered from severe impairments, including "osteoarthritis of the lumbar spine and depression." *Id*.  Although Mr. Guadagnoli had other medically determinable impairments, the ALJ found that "[t]hese impairments singly or [in] combination, do not more than minimally affect the claimant's ability to perform basic work related activities, and are therefore nonsevere impairments."  AR 21.  At step three, the ALJ found that none of Mr. Guadagnoli's impairments, alone or in combination, met or equaled a Listing, and she continued to step four.  AR 21–22.

At step four, the ALJ determined that Mr. Guadagnoli had the residual functional capacity ("RFC") to perform a wide range of light work as defined in 20 C.F.R. § 404.1567(b).

4

AR 22.[4]  However, he was unable to perform any past relevant work.  AR 25.  Given his age,

education, work experience, and RFC—and relying on the testimony of the vocational expert—

the ALJ found that Mr. Guadagnoli has "acquired work skills from past relevant work that are

transferable to other occupations with jobs existing in significant numbers in the national

economy."  AR 26–27.  Specifically, she found that Mr. Guadagnoli could perform the

occupations of check cashier and telemarketer.  AR 26.  Consequently, at step five, the ALJ

found that Mr. Guadagnoli is not disabled within the meaning of the Social Security Act.  *Id*.

The Appeals Council denied Mr. Guadagnoli's request for review, making the ALJ's decision

the final decision of the Commission, AR 1–3, and prompting this appeal.

### III.   The Claims

Mr. Guadagnoli raises three issues on appeal:  1) that the ALJ erred at steps four and five

by finding that Mr. Guadagnoli has transferable skills based on his work as a cashier at Target; 2)

that the ALJ erred at step five by finding that Mr. Guadagnoli has transferrable skills because his

advanced age would require more than very little vocational adjustment; and 3) that the ALJ

improperly rejected the medical source opinion of Mr. Guadagnoli's treating medical provider.

*See* Doc. 21.

### IV.   Discussion

#### A. The ALJ Erred at Steps Four and Five by Finding that Mr. Guadagnoli has Transferable Skills Based on his Work as a Cashier at Target.

##### 1. Acquired Skills from Past Relevant Work

The ALJ erred by finding Mr. Guadagnoli acquired transferable skills from his past

relevant work as a cashier at Target because that job was not substantial gainful activity.  "To be

---

[4] The entire RFC can be found at AR 22.  The specifics of Mr. Guadagnoli's ability to perform each work function are not relevant to the issues in this case and therefore have not been included.

considered past relevant work, a claimant's previous work must rise to the level of substantial

gainful activity." *Newman v. Chater*, 91 F.3d 159 (Table), 1996 WL 375359, *1 (10th Cir.

1996) (unpublished) (citation and internal quotation omitted).  Past relevant work is defined as

"work that you have done within the past 15 years, that was substantial gainful activity, and that

lasted long enough for you to learn to do it."  20 C.F.R. §§ 404.1560(b)(1), 404.1565(a).

Substantial gainful activity is defined as doing significant physical or mental activities for a

profit whether or not a profit is realized.  20 C.F.R. §§ 404.1572(a), (b).  The amount of money

earned doing a particular job is a primary consideration in determining whether a person is

engaged in substantial gainful activity.  20 C.F.R. § 416.974(a)(1).  Generally, the Commissioner

will find that a person is engaged in substantial gainful activity if his or her earnings are

substantial.  *Id.*  A job does not qualify as substantial gainful activity where a claimant has made

only minimal monetary earnings.  *See Ramirez v. Astrue*, 255 F. App'x 327, 332 (10th Cir. 2007)

(unpublished).

   At step two, the ALJ found that Mr. Guadagnoli had not engaged in any substantial

gainful activity since July 1, 2013, the alleged onset date.  AR 20.  She specifically noted that

Mr. Guadagnoli worked as a cashier at Target on a part-time basis[5] and stated that the earnings

during the relevant time frame "fall short of the amount considered substantial gainful activity."

AR 20, 38 (clarifying that the sales associate position at Target was "basically a cashier"

position).  Because the cashier position at Target was not substantial gainful activity, that

particular job cannot be considered past relevant work.  *See Ramirez*, 255 F. App'x at 332; 20

---

[5] Mr. Guadagnoli worked at Target from February 17, 2013, through June 30, 2013, on a part-time basis.  AR 183, 220.

C.F.R. § 404.1560(B)(1) ( defining past relevant work as work within the past 15 years "that was substantial gainful activity").

At step four, the ALJ found that Mr. Guadagnoli was unable to perform any past relevant work.  AR 25.  The ALJ then analyzed whether Mr. Guadagnoli acquired work skills from his past relevant work that could be transferred into a different job.  "An ALJ can find a claimant's acquired skills are transferable to other jobs when the skilled or semi-skilled work activities [the claimant] did in past work can be used to meet the requirements of skilled or semi-skilled work activities of other jobs or kinds of work."  *Dikeman v. Halter*, 245 F.3d 1182, 1185 (10th Cir. 2001) (internal quotations and citation omitted).  Under the Social Security regulations, a "skill" is "knowledge of a work activity which requires the exercise of significant judgment that goes beyond the carrying out of simple job duties and is acquired through performance of an occupation which is above the unskilled level (requires more than 30 days to learn)."  Social Security Ruling ("SSR") 82-41, 1982 WL 31389, at *2 (1982).  "Skills are not gained by doing unskilled jobs."  *Id.*  "When an ALJ makes a finding that a claimant has transferable skills, [s]he must identify the specific skills actually acquired by the claimant and the specific occupations to which those skills are transferable."  *Dikeman*, 245 F.3d at 1185.

Relying on the testimony of the vocational expert ("VE"), the ALJ determined that Mr. Guadagnoli had acquired the work skills of handling money and dealing with customers from his past relevant work as a cashier/checker.  AR 26.  However, the cashier job at Target does not qualify as "past relevant work."  It therefore was error for the ALJ to have considered the Target job in her analysis of whether Mr. Guadagnoli had acquired work skills.

The Commissioner argues that although the cashier position at Target may not be considered past relevant work for transferability purposes, "Plaintiff performed the job of cashier

on more than one occasion.  He worked full-time as a cashier at Walmart for five years, between 2000 and 2005."  Doc. 25 at 7 (citing AR 198).  While Mr. Guadagnoli's job at Walmart could qualify as past relevant work, there is no evidence in the record that he worked as a cashier at Walmart or that his job duties included handling money and dealing with customers.  The page cited by the Commissioner in support of this argument shows that Mr. Guadagnoli's job title at Walmart was "sales associate."  There is no further description of the position on that page or what duties and skills the job entailed.  "Neither an occupational title by itself nor a skeleton description is sufficient" to determine what skills a claimant acquired at a particular job.  *Dikeman,* 245 F.3d at 1185.  In determining whether skills from a claimant's past relevant work are transferable, ALJs must pay close attention to the actual complexities of the job.  *Id.* (citing SSR 82-41).  The Social Security rulings recognize that "[t]he claimant is in the best position to describe just what he or she did in [past relevant work], how it was done, what exertion was involved, what skilled or semiskilled work activities were involved, etc."  SSR 82-41(3)(a), 1982 WL 31389, at *4.

The record contains very little evidence of the skills Mr. Guadagnoli acquired from past relevant work.  The only description of Mr. Guadagnoli's job duties at Walmart are contained in his work history report, which states:

> was stocker for the night-receiving dept. unloaded freight and placed it in the different departments for sale to the customer, also used pallet [jack] to move freight to the different areas of the store.

AR 218.  There is no evidence in the record indicating that Mr. Guadagnoli handed money or dealt with customers at Walmart.

Because the Target job cannot be considered past relevant work, and the Walmart job did not include handling money or dealing with customers, the ALJ erred in determining that Mr. Guadagnoli acquired those skills through his past relevant work.

### 2.  Transferability

"Transferability means applying work skills which a person has demonstrated in vocationally relevant past jobs to meet the requirements of other skilled or semiskilled jobs." SSR 82-41(2)(b), 1982 WL 31389, at *2.  "Transferability of skills is an issue only when an individual's impairment(s), though severe, does not meet or equal the criteria in the Listing of Impairments in Appendix 1 of the regulations but does prevent the performance of past relevant work (PRW), and that work has been determined to be skilled or semiskilled."  SSR 82-41(1), 1982 WL 31389, at *1.  "Transferability is most probable and meaningful among jobs in which—(i) The same or a lesser degree of skill is required; (ii) The same or similar tools and machines are used; and (iii) The same or similar raw materials, products, processes, or services are involved."  20 C.F.R § 404.1568(d)(2).  For a person closely approaching retirement age (age 60 or older) who has impairments that limit him to light work—as in this case—the Commissioner may find that he has skills that are transferable to other skilled or semiskilled light work "only if the light work is so similar to your previous work that you would need to make very little, if any vocational adjustment in terms of tools, work processes, work settings, or the industry."  20 C.F.R § 404.1568(d)(4).

At step five, the ALJ found that considering Mr. Guadagnoli's age, education, work experience, and residual functional capacity, he had skills that were transferable to other occupations with jobs existing in significant numbers in the national economy.  AR 26.  These

jobs included check cashier[6] and telemarketer.[7]  *Id.*  However, as discussed above, there is no evidence that Mr. Guadagnoli's past relevant work included the skills necessary to perform these jobs.  The ALJ erroneously determined that Mr. Guadagnoli had acquired transferable skills.  Accordingly, substantial evidence does not support the ALJ's conclusion that there were other jobs in the national economy that Mr. Guadagnoli could perform based on the transferability of skills.

---

[6] The Dictionary of Occupational Titles ("DOT") defines the job of check cashier as:

> CODE: 211.462-026
> TITLE(s): CHECK CASHIER (business ser.) alternate titles: cashier, check-cashing agency
>
> Cashes checks, prepares money orders, receives payment for utilities bills, and collects and records fees charged for check-cashing service.  May receive payment and issue receipts for such items as license plates.

http://www.occupationalinfo.org/21/211462026.html.

[7] It is unclear from the hearing transcript whether the VE eliminated telemarketer as a potential job Mr. Guadagnoli could perform.  AR 56.  However, the ALJ considered the telemarketer job in her analysis at step five.  AR 26.  The ALJ did not, however, specify which skills Mr. Guadagnoli acquired from his past positions that would transfer to a telemarking job.  *See id.* The DOT defines the job of telephone solicitor as:

> CODE: 299.357-014
> TITLE(s): TELEPHONE SOLICITOR (any industry) alternate titles: telemarketer; telephone sales representative
>
> Solicits orders for merchandise or services over telephone:  Calls prospective customers to explain type of service or merchandise offered.  Quotes prices and tries to persuade customer to buy, using prepared sales talk.  Records names, addresses, purchases, and reactions of prospects solicited.  Refers orders to other workers for filling.  Keys data from order card into computer, using keyboard.  May develop lists of prospects from city and telephone directories.  May type report on sales activities.  May contact DRIVER, SALES ROUTE (retail trade; wholesale tr.) 292.353-010 to arrange delivery of merchandise.

http://www.occupationalinfo.org/29/299357014.html

**B.  The ALJ Erred in her Assessment of Mr. Guadagnoli's Treating Medical Care Provider.**

Mr. Guadagnoli contends that the ALJ failed to properly assess his medical care provider, Joseph Kobliska, a certified physician's assistant.  Doc. 21 at 19–23.  As a physician's assistant, Mr. Kobliska is not considered a "treating physician" whose opinions are generally entitled to "controlling weight."  *Hackett v. Barnhart*, 395, F.3d 1168, 1174 (10th Cir. 2005).  Instead, he is considered an "other source."[8]  Information from other sources "may provide evidence to show the severity of [a claimant's] impairment(s) and how it affects [a claimant's] ability to work," *Frantz v. Astrue*, 509 F.3d 1299, 1301 (10th Cir. 2007) (*quoting* 20 C.F.R. § 404.1513(d)), but cannot establish the existence of a medially determinable impairment, or provide medical opinions,[9] which are duties solely within the purview of "acceptable medical sources."  *Id.* at 1301 (citing 20 C.F.R. § 404.1527(a)(2)); *see also,* 20 C.F.R. §§ 404.1513(a), 416.913(a)(1), (2).  However, the factors for weighing the opinions of acceptable medical sources set forth in the regulations apply with equal force to "other source" opinions.[10]  *Frantz*, 509 F.3d at 1302; *see*

---

[8] "Other sources," as opposed to "acceptable medical sources," include, but are not limited to, nurse practitioners, physicians' assistants, naturopaths, chiropractors, audiologist, and therapists.  20 C.F.R §§ 404.1502(a), 404.1513(a).  "Acceptable medical sources" include licensed medical or osteopathic doctors, psychologists, optometrists, podiatrists and qualified speech-language pathologists.  20 C.F.R. § 404.1527(a)(2).

[9] A "medical opinion" is a statement that reflects judgments about the nature and severity of a claimant's impairments, including symptoms, diagnosis, prognosis, what they can still do despite any impairments, and any physical or mental restrictions. 20 C.F.R. 404.1527(a)(2).

[10] Those factors include:

> (1) the length of the treatment relationship and the frequency of examination;
> (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed;
> (3) the degree to which the physician's opinion is supported by relevant evidence;
> (4) consistency between the opinion and the record as a whole;
> (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and

*also* SSR 06-03p, 2006 WL 2329939.  While the ALJ is not required to discuss each factor, an ALJ must "explain the weight given to opinions from these 'other sources,' or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case."  *Frantz*, 509 F.3d at 1302 (quoting SSR 06-03p, 2006 WL 2329939, at *6).

Here, the ALJ gave Mr. Kobliska's opinion "some weight," noting that "Mr. Kobliska was not the claimant's treating provider at the time he completed this report."  AR 24.  The ALJ mistakenly believed that Mr. Kobliska first examined Mr. Guadagnoli on October 3, 2013, shortly before Mr. Kobliska completed his report dated October 18, 2013.  *See id.*  This is incorrect.  As Mr. Guadagnoli points out, he began treatment with Mr. Kobliska in November of 2012 and attended several appointments with him over the course of 16 months.  Doc. 21 at 7–8 (citing AR 347, 363, 374–75, 409, 656–59, 714, 720, 870–71).  The length of the treatment relationship and the frequency of examination is a factor that an ALJ must consider when weighing a medical provider's opinion.  *Frantz*, 509 F.3d at 1302; *see also* SSR 06-03p, 2006 WL 2329939, at *4.  Although not required to discuss each factor, the ALJ specifically noted that she was not affording Mr. Kobliska's opinion significant weight because "he has no longitudinal relationship with the claimant."  AR 24.  The ALJ simply misapprehended the evidence.

The Commissioner argues that although the ALJ was incorrect with regard to the longevity of the relationship between Mr. Kobliska and Mr. Guadagnoli, the ALJ had other valid

---

(6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Robinson v. Barnhart*, 366 F.3d 1078, 1082 (10th Cir. 2004) (citation omitted).

reasons to reject Mr. Kobliska's opinions. Doc. 25 at 6. This argument is not persuasive. First, the Commissioner does not direct the Court to any of the other "valid reasons" the ALJ had for rejecting Mr. Kobliska's opinions. *See id.* The Court is not obligated to comb the record to make the Commissioner's arguments for her. *See Mitchell v. City of Moore*, 218 F.3d 1190, 1199 (10th Cir. 2000).

Second, the Court cannot follow the ALJ's reasoning for the weight given Mr. Kobliska's opinion. Mr. Kobliska opined that Mr. Guadagnoli can stand or walk for 2 hours a day and can sit for less than 6 hours in an 8 hour work day. AR 656–57. The ALJ found that Mr. Kobliska's opinion was not consistent with the overall medical evidence or his activities of daily living. AR 24. With regard to the overall medical evidence, the ALJ discussed the opinion of Dr. W. Marion Jordan, who performed a one-time medical consultative examination of Mr. Guadagnoli. AR 25, 682–86. Although the ALJ found Mr. Kobliska's opinions were not consistent with Dr. Jordan's opinions, she found that Mr. Guadagnoli's limitations more restrictive than Dr. Jordan described. *Id.* The Court therefore is left to guess at what "overall medical evidence" the ALJ relied on to come to this middle ground.

Third, the limitations noted by Mr. Kobliska are not necessarily inconsistent with a person who can perform the activities described by Mr. Guadagnoli. The ALJ described Mr. Guadagnoli's activities as including walking for 30 minutes, riding a bike (for an unspecified time or distance), volunteering serving lunch at a homeless shelter, and traveling abroad. AR 24. She fails to explain, however, why a person who is limited to standing for 2 hours in a day or sitting 6 hours in an 8 hour day cannot still engage in these activities. Instead, she speculates that sitting on an airplane for long periods would affect his arthritis and that site seeing would require a great deal of standing or walking. AR 25. There is no evidence in the record that supports

these conclusions.

The ALJ relied on a misapprehension of the facts when weighing Mr. Kobliska's opinion. Had the ALJ correctly understood the length of the relationship between Mr. Kobliska and Mr. Guadagnoli, she may have weighed his opinion differently.  On remand, the ALJ will have the opportunity to reconsider the weight given to Mr. Kobliska's opinion based on all of the evidence in the record and provide enough detail to allow Mr. Guadagnoli or a subsequent reviewer to follow her reasoning.

### C.  Plaintiff's Request for an Immediate Award of Benefits

"When a decision of the Secretary is reversed on appeal, it is within this court's discretion to remand either for further administrative proceedings or for an immediate award of benefits."  *Ragland v. Shalala*, 992 F.2d 1056, 1060 (10th Cir. 1993).  In deciding which remedy is appropriate, the Court considers both "the length of time the matter has been pending and whether or not given the available evidence, remand for additional fact-finding would serve any useful purpose but would merely delay the receipt of benefits."  *Salazar v. Barnhart,* 468 F.3d 615, 626 (10th Cir.2006) (internal citations and quotations omitted).  A remand for an immediate award of benefits "is appropriate when the record fully supports a determination that Plaintiff is disabled as a matter of law and is entitled to the benefits for which he applied."  *Sorenson v. Bowen,* 888 F.2d 706, 713 (10th Cir.1989).

Although this case has been pending for almost 3 years, a remand for an award of immediate benefits is not appropriate.  On remand, the ALJ will need to develop the record with regard to the duties and skills Mr. Guadagnoli has acquired from his past relevant work—and must consider only those jobs that qualify as past relevant work—when determining whether any of those skills are transferable.  Further, the ALJ's assessment of Mr. Kobliska's opinion must be

reevaluated in light of the fact that Mr. Kobliska had a significantly longer treating relationship with Mr. Guadagnoli than the ALJ understood.  Consequently, remand for additional fact-finding is appropriate as the record does not fully support a determination that Mr. Guadagnoli is disabled as a matter of law.  The Court will not address Mr. Guadagnoli's other claims of error as they "may be affected by the ALJ's treatment of this case on remand."  *Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003).

## V.    Recommendation

Because the ALJ incorrectly applied the legal standards, and because substantial evidence does not support the ALJ's findings, I recommend that the Court grant plaintiff's Motion to Remand (Doc. 21) and remand this matter to the Commissioner for further proceedings.

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE of a copy of these Proposed Findings and Recommended Disposition, they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1)(C).  A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition.  If no objections are filed, no appellate review will be allowed.**

Laura Fashing
United States Magistrate Judge